Good morning, everyone, and welcome to the Ninth Circuit. Judges Clifton and Bennett and I want to welcome you to our court, and thank you for having us here in Phoenix. We love being here. We have a number of matters on calendar today. Some of them have been submitted. I will call them in the order that they appear on the calendar. One thing, counsel, just remember, keep track of your time. If you want to save rebuttal time, that's fine. It's up to you to reserve it. And just remember, when that light starts flashing red, that means stop. It's not like I always say, it's not like the crosswalk where you start walking faster when it's flashing red. Flashing red means stop, and I will try to enforce that rule. And with that, we'll go ahead and call the first case. And I apologize, I've been pronouncing the last name because it's Pangerl. That works? Okay, Pangerl v. Peoria Unified School District.  My name is Regina Pangerl, and I'm appearing individually and on behalf of my disabled daughter, Tiffany Pangerl. We filed a due process complaint under the IDEA back in 2015 related primarily to two main issues, the unlawful unenrollment of TP from her IEP services, and also the denial of fate because the school district had failed for the entire 2013-14 school year to provide Tiffany with any of her services. The matter went before the Office of Administrative Hearings, and the ALJ determined that the OAH lacked jurisdiction over the case because the case was governed by a state funding statute. However, if you look at the language, which is quoted in my reply brief, of that statute, nowhere does it mandate unenrollment of students. It relates to how you count students. Well, I have to say I'm confused by this because the district court's order made it pretty clear, at least the court's view, that unenrollment was maybe a statistical or a state accounting or state funding issue, but it didn't mean that the school district wasn't prepared to provide educational services. Do you dispute that? Well, the claim here is that the school did not provide those services. Well, yeah, but if they didn't provide the services because you elected at that point to send her to the private program instead, that's not the same as the school district saying no. Was there an effort made to re-enroll her after this notice of unenrollment was received? Well, she was unenrolled. That's a yes or no question. Was there an effort made to re-enroll her? No, because she was placed with the private school, which under the IDEA. Well, see, stop, because she was placed at the private school based on your judgment. I don't see anything that suggests the school district wasn't prepared to provide educational services. And you've just indicated you didn't ask them to re-enroll her. The letter that the district court cites speaks of smooth transition enrollment when you were ready to have her begin school. So I haven't seen anything that says the school district wasn't prepared to provide the services. Now, you may have received this notice of unenrollment, and it's suggested in the district's brief you decided, well, there's my opportunity because I'd rather send her to the private school. But I don't see where the school district ever said no. And if it didn't say no, what's the beef? Well, they said there would be a smooth transition, but it was after that that they unenrolled her from all of her services. But, see, that doesn't say they wouldn't re-enroll her. Unenrollment, as your brief indicates, is driven by the state's desire not to be paying financial support for students that aren't attending the school. So they have this provision about how you keep track of how many students are enrolled. But I haven't seen anything that suggests the school district wasn't prepared to provide educational services, that the school district ever denied services. Well, they never offered her a free and appropriate public education after that date. How do you know? If you never asked to enroll her again, what's the basis for that statement? Well, it was their obligation to offer FAPE, and they did not do that, Your Honor. No, no, no. You just said you never attempted to re-enroll her. So what is the school district supposed to do? Go and drag her out of the private program you've enrolled her in? Well, Your Honor, even when students are in private schools or they're expelled or suspended, the district still is obligated to provide a free and appropriate public education. When did they ever turn down any requests to provide that education? Well, when my daughter became very ill and was hospitalized, I reached out to them again after reaching out to them previously, and they still denied an offer of FAPE. Is there anything in the record that talks about that? Well, it's in our due process complaint, Your Honor. It's in all my briefing at the district court level and at this level as well. Can you point to it? Because this is all news to me, the talk about what happened months later. Because I haven't found anything, and I'm asking you to point me to it if it's in the record. I haven't found anything that suggests the school district said no to any requests to provide services to her after this unenrollment episode. It's within the due process complaint pages 1 to 13. Would you like me to cite the specific pages? Point me to anything. And keep in mind you've acknowledged that there's been no request to the school district to re-enroll her, so I'm not sure exactly what it is the school district's supposed to have done. Well, under the state put provision, they were not allowed to unenroll her. Well, that's an entirely different objection, and I don't understand where that comes from. That's not an objection you've made so far. You've complained about not providing services, but the school district has suggested this may be a result of your desire to send her to the private program instead. If there was no request after this unenrollment, which your own brief indicates is driven by state financial support, but if there's nothing that says the school district wouldn't re-enroll her, wouldn't provide services, I have trouble finding out what the problem is. And the district court talks about this explicitly, and I don't see in your brief to us where you contest that. If you look at the due process notice, Your Honor, on pages, it's actually my excerpts of the record for the opening brief. It talks about page 6. We requested services after my daughter became ill, and the district. Your opening brief to this court? Yes. Page 6 is an index. Page 6 of my excerpt. It's a table of contents. So what page should I look at in the opening brief? You're talking about your excerpts of record, correct? The excerpts of the record, page 6. Okay. Yes. I'm sorry. This is the due process complaint notice addendum. You're talking page, so it's page 6 of the ER. Yes. But page 3 of the due process complaint. Correct. Okay. So on that page, there are a number of paragraphs. What paragraph are you talking about? So the second. Are you talking about the second paragraph? Starting with the second paragraph, second and third. Until she became seriously ill. Correct. It says the district e-mailed me and said the district is not obliged to the provision of FAPE and refused to provide any service. So I look at the top of that, page 6, and it says the letter that was received from the school district acknowledges that TP still remained eligible for such programs and services and advised TP's parents to Did the parents ever contact the school? They were trying to change her school. Her home school was not where she had been placed under her IEP. Again, you've got grievances that I haven't seen articulated in any place or discussed in the brief. I'm trying to focus on this. Well, I actually did reach out to the school, Your Honor, but we never had a hearing. This case was dismissed for lack of jurisdiction, so we never had a hearing to present evidence on that issue. You're free to make your argument. I've got to tell you, I haven't figured out what the problem is where the school district said no. And if you can point me to something where the school district says no, I understand the grievance. If you don't, and I don't think you have so far, I'm willing to listen to anything else you have to say, but I have a hard time seeing how the school district's liable. Counsel, as I understand your argument, you're saying that there are multi-steps to your argument, but one of your first steps to your argument, and you just said it, was that you didn't get a hearing. Correct. And that under the IDEA you're required to have a hearing. What I hear Judge Clifton asking you is that to get a hearing, you have to show that you were actually denied something you requested. You have to show that your claim relates to the evaluation, identification, or placement of the child, the special education student. Placement of the student means their IEP services, what's listed in their IEP. So the claim that we made on behalf of Tiffany was with respect to the failure of the district to provide her IEP services. And so as to that point, I think what Judge Clifton is asking is how the district failed to provide it if it was never requested. I think that's what he's getting at. So can you help us, assuming that's a gap in the case, can you help us fill that gap? Well, Tiffany was already under an IEP, and so the district was already obligated to provide those services. And the district violated state put, which is a federal IDEA statute, when they unenrolled her and removed her from her services. It wasn't just that they unenrolled her, they removed her from her special education services pursuant to her then current IEP. So it's your argument then by the district unenrolling your child and the fact that you complained about that, that that triggered the right to a hearing. Correct. Their violation of state put and their removal of her from her services triggered the parental right to request a due process hearing. Because I think the concern that's being expressed is that what triggers the right to a hearing? Because clearly there was no hearing in this case. There was no hearing. Correct. And if you had a right to a hearing and it didn't happen, then you probably should get a hearing. The question is what triggers the right to a hearing? And you're saying the unenrollment of your daughter and stopping the services she was receiving, that that was enough. Yes, they failed to provide her with FAPE, which is a free and appropriate public education. And I would like to reserve a little time if I may. Very well, we'll do that. All right. Thank you. Good morning, Your Honors. May it please the Court. Aaron Walls on behalf of the Peoria Unified School District. You are correct. This was dismissed by the Office of Administrative Hearings for lack of jurisdiction. So, Counsel, I don't understand how that can happen. The way I read 20 U.S.C. 1415 and the regulations, if someone makes an allegation, even a meritless allegation, that they have been denied a FAPE or an evaluation of an educational placement of a child with a disability, even if their claim is factually meritless, that the Congress and the regulations has provided them an absolute right to a due process hearing at which the hearing officer can say absolutely meritless, your child wasn't disenrolled, you're misinterpreting what you got. Why doesn't the claim that you're denied a FAPE entitle you to a hearing, even if your claim is meritless, as I'm sure your position is. Claims are often meritless. What was actually alleged in the Office of Administrative Hearings was that her unenrollment under state law violated the IDEA. Well, there are other things in there, too. There are. I agree. So what is mandatory is the opportunity for a hearing, not a guaranteed right. What does that mean, that you have the opportunity for a hearing? If you allege a claim that falls within the IDEA parameters, the identification, evaluation, or placement of a student, or the provision of FAPE, then you have the opportunity for a hearing. What does that mean, the opportunity for a hearing, as opposed to the way I read the statute is that as long as you provide the appropriate notice, you're entitled to a hearing. What does opportunity for a hearing mean? You have the right to file your complaint, have it reviewed by an administrative law judge under the parameters of the IDEA. The state court rules apply. Dispositive motions are considered every day in our Office of Administrative Hearings. Some are granted. Sometimes partial claims are dismissed because they don't state a claim, because there's no relief that can be granted. There is not a guaranteed right for all of those. So someone makes a claim, I was denied a FAPE, and the hearing officer thinks this is a pretty meritless claim, they're never going to be able to prove it. I've given you an opportunity for a hearing, but I don't think you get one so you don't get one, and that's okay under the statute? If all that complaint says is I was denied FAPE, that's correct. That is insufficient under the IDEA pleading requirements to state a claim. Well, yeah, that is under the notice requirements, but here Mrs. Pangirl alleged that her daughter was disenrolled, and the school's position is, well, she got that wrong. So the hearing officer can decide on what disenrollment means without giving her a hearing. I believe she absolutely can. What the ALJ did here was say you're alleging the unenrollment is illegal, and that is truly what the complaint said. I don't have authority over that. Parent did not allege that her educational placement was changed because it wasn't. The student was actually not impacted at all by this notice of unenrollment under state law. So there was no allegation in the complaint that Tiffany was impacted. The ALJ in our Office of Administrative Hearings has jurisdiction over what's happening to that student. Was her educational placement changed? The ALJ could have taken jurisdiction under the IDEA. That's not what was alleged here. So he can make a preliminary determination, in your view, without a hearing. She says this disenrollment means without positive action by her, the student can't come back in the school. And even if that's true, even if that's arguably true, the ALJ can say, no, no, no, I don't think that's what the statute means. Tiffany could have come back in the school, so no hearing. I don't know if the ALJ made those that had that thought process. She didn't allege that in her order. What she said was you're complaining about a state law, and I don't see an IDEA claim over which I have jurisdiction. So state law can provide for disenrollment of a student who's entitled to a FAPE, and if the state law provides exactly what the state did, then there's no right to a due process here? Not if it doesn't implicate the student with disabilities. Although the claim here, and I read the due process complaint a little bit differently than you do, the claim is that disenrollment meant without positive action she couldn't go back. Well, positive action, so there was an offer of FAPE and an IEP made available to her. Her choice not to take it because of a state law puts a tremendous onus on the state law. Well, she was given a notice that said your child is disenrolled. She was indeed, and she was also given a notice that said we remain ready, willing, and able to provide you with a FAPE, and let's schedule an IEP meeting. And she chose literally the next day to say no thanks, I'm going to do a private placement. So what does disenrollment mean? It means that under our funding statutes there's a way that we count heads for funding purposes, and a student who has been absent for ten or more consecutive days, unexcused. There's a list of reasons allowed by the Arizona Department of Education. We administratively withdraw them. We can't count them for our funding purposes. I'm looking at ARS 15901, and it talks about withdrawals. Withdrawals include students who are formally withdrawn from schools and students who are absent for ten consecutive days except for the excused absences identified by the Department of Education. Is there anything in the statute that says that when a student is unenrolled, they still nonetheless have a right just to come to school? Not under the funding statutes, no. So is there anything that would tell a parent that even though you get a letter saying your child is disenrolled, that doesn't mean your child can't come to school? In this case, Ms. Pangirl had communication from the district upper-level administrators telling her that. Well, telling her that we're ready to meet with you and we can discuss this, but they didn't say your child is not unenrolled. No, they did not take it back. They couldn't. They could not count this student. She didn't attend for five weeks. So we have the provision of IDEA services on one hand, but we also have to administratively run a 40,000-student district. What we said to her was she's been administratively withdrawn, but we're here. All you have to do is let us know you want to come back. She was already embroiled in litigation with the district. Okay, so by telling her you have to let us know you want to come back, that means that we've done something that without your telling us you want to come back, that we've done something that's stopped you from coming unless you tell us you want to come back. That is correct. So without the I want to come back part, Tiffany couldn't have gone to school. Without her mom saying, yes, we want to come back, the school did something that stopped her from accessing services. Stopped her from accessing services. She could have walked into a school the next day and said I'm back, and it would have been made to happen. So, yeah, she had to get in a car and drive to the school. It would have been made to happen. It would have. But you just said if she had asked to come back. Well, if she had asked to come back, every student makes a choice to go to school every day. If Tiffany made that choice on September 9th, rather than sending a notice, she would have been taken back to her class. We would have said, Mrs. Pangirl, would you sign this? And it would have been done. Is that too much affirmative action? Every single student in the district is held to that standard. If somebody new moves to the district, is it the same process? It's slightly more onerous for a new parent. They have to prove that they're residents. They have to provide their immunizations. They have to come in and sign documents. So a new attendee of a district has more hurdles than Tiffany would have had. So this is more like a student who's lived there, maybe the family goes on a sabbatical for a semester or something, and he's going to school elsewhere but comes back. The process simply means showing up at school again, and they fill out the paperwork, and that's it? Absolutely. Absolutely no difference for any student. And there are almost 40,000 students in this district. There is no way for the district to be held that Mrs. Pangirl gets a different standard than the other 40,000. This is how we get our funding. One of the problems here may be that the hearings officer dismissed the matter on a ground that the district court ultimately concluded wasn't appropriate, that is, that it didn't have jurisdiction because it didn't relate to educational services, whatever the phrase was. Should that have required a hearing because the ground cited by the hearings officer was deemed by the district court to be incorrect? What was the basis for the district court deciding at that point the claim is extinguished on a different ground which the hearings officer hadn't cited? Actually, what the district court found was that the ALJ had ruled on two grounds. Although it took some wordsmithing, she divided the sentence in half. The administrative law judge held that it was a matter of state law, not within the IDEA. The district court said, as to the second half, not within the IDEA, I disagree, but it is a matter of state law. And then it looked at the state law piece. Judge Silver in the district court did. And Judge Silver found that it was as simple as coming back. And so it was disingenuous. In fact, Judge Silver found the argument to be specious, to claim that because even though Judge Silver agreed with Parent that it was related to educational placement, however tenuous, it was a matter of state law that the unenrollment be upheld as a matter of state law. And so upheld the administrative law judge under those grounds, divided the sentence in half, and looked at them both separately. So as to the stay put, that is not an appropriate argument when you are two years past the event. Stay put is injunctive relief. It is not to be used as a sword. It is a shield. The district court didn't consider the argument, and I don't believe it has merit here. The preemption argument I think we've covered, and that is that there is no necessary conflict between the state funding statute and the IDEA. The state funding statute is applied in a nondiscriminatory matter. There were no additional hurdles to Tiffany. If it's just a matter of state funding, what's the purpose of sending a notice to the parent? If it doesn't really affect anything, the parent takes their child away for 15 days on a vacation without notifying the school or here completing summer school. If it really has no impact at all on the student and it's just a matter of funding, what's the purpose of this notice to the parent your student is unenrolled? I think the purpose is to advise them that there has been this change in their status at the school, at the district, and don't go through the parent drop-off line if you're going to bring them back. Park the car and walk the student in because you're going to need to sign some paperwork. I think that is the purpose. So it is a change in the student's status and placement unless and until they do certain things which you say are ministerial and routine, but it is an actual change in the student's placement until the parent does these things, and that's why the notice is sent. Well, placement implies that it's educational placement under the IDEA. We did not change her placement. She was privately placed. Okay, but it's a change in the student's status. Status, absolutely. Absent doing certain things. That is correct, Your Honor. Okay. Parent also made discrimination and retaliation claims. The Office of Administrative Hearings and the district court found that those were properly dismissed, not within the IDEA jurisdiction as to discrimination. So if someone alleges you have stopped my special education classes for which I'm qualified because I'm Asian American, that you're not entitled to a due process hearing if you're claiming that the district discriminated against you because you're Asian American and that stopped your placement? That is correct. You need to exhaust the remedy, but that's a Rehabilitation Act Section 504. So it's okay to make a claim that I'm denied a FAPE because you misevaluated my condition? It's okay. As a discrimination? That's an okay claim. You're entitled to a hearing. The district cut back on my services because they improperly evaluated my condition. They just got it wrong. Absolutely, a failure. But they just got it wrong, and I'm Asian American. That's why they did it. Then you're entitled to a due process hearing on Part 1 but not Part 2? Correct. The Office of Administrative Hearings won't hear the discrimination claims. This court has consistently held that those are not within the IDEA. They're within Section 504. So your view is that notwithstanding the fact that the regulations say any that you have the right to file a complaint relating to the identification, evaluation, or educational placement of a child with a disability or the provision of a FAPE, if you allege I was denied a FAPE for multiple reasons, and one of them is discrimination based on race, that you get a due process hearing on some of what you're talking about but not on that you were discriminated against because of race? That is correct. So if you have the hearing and the hearing officer finds at the hearing you were denied a FAPE, but it wasn't because they misevaluated you, it's because you're Asian American, you lose? I'm not sure how an administrative law judge would make that finding. I have found that they will not. They'll simply say, I note that you have pled. You are noted to be exhausting your remedies. Whether or not discrimination occurred is a Section 504 claim that you can hear in the federal court. That is how it's handled in our Office of Administrative Hearings. My understanding from the Ninth Circuit court law is that that has been blessed many times as the appropriate mechanism for all discrimination claims. If there is nothing further, I am over my time. Thank you very much, Counsel. Thank you very much. Because we went a little over, let's give five minutes for rebuttal. Thank you. So the district stated that parents did not allege that Tiffany's placement was changed or that Tiffany was impacted when the due process complaint was filed. The due process complaint, Your Honors, is 13 pages. It talks all about how Tiffany's placement was changed and how she was impacted. The district removed her from her school and removed her from all of her IEP services. That is, of course, a change in her placement. It's the removal of her placement. Well, that's not all the complaint says. I mean, the complaint acknowledges that the school district communicated and said she's still eligible for programs and services, and you've got to contact her home school to sign up and schedule a meeting. Where's the denial? Well, they unenrolled her from her school and took away her services. Let's focus on unenrolled. Is it all about the notice of unenrollment? Is there anything else that the school district did? Yes, because they failed to implement the services in her IEP, and that's their requirement. Stop. They failed to implement. Was a request ever made for those services to be provided after this notice of unenrollment? I asked that question before, and you told me no. Do you have a different answer now? Well, the IEP was already in place. It was already agreed upon. It was already in full force and effect. Let me tell you, the impression I'm getting is that you get this notice of unenrollment. You know it's accompanied by, in at least a couple different letters, statements, let us know if you need help in the reenrollment process. Another letter says, according to your due process complaint, tells you that she's still eligible for programs and services. Contact the home school. And you don't do anything to contact the home school. You don't make a request for the services to be provided. Instead, you pick up the unenrollment concept and rush over to the private program that you preferred. You can do that, but I'm having trouble figuring out where the school district said no, where the school district refused to provide services. Will you point me to something? I believe that they already had unenrolled her before they made any offer to have a meeting at a different school. Is this all about this notice of unenrollment, which your own brief talks about as a state financial provision, is not itself a denial by the school district of services? Do you have anything else other than this notice of unenrollment to point at? Well, that's the notice that they used to remove her from all of her special educational services. And did they ever say no, that they wouldn't reenroll her? You've already answered that question, no. And to me, that means you're trying to take advantage of this notice of unenrollment driven by state law to mean a whole lot more than it really meant. Well, they unenrolled her. That's what I understood it to mean. Well, wait a minute. How did you understand that if, according to your due process complaint, you get a letter that acknowledges she still remained eligible for programs and services and invite TEP parents to contact her home school to schedule a new meeting? If you receive that, how did you understand unenrollment to constitute a denial of services? Well, first of all, they were trying to change her school. Second of all, there shouldn't have been a new meeting to create a new IEP because there was already an IEP in place that the district was required to implement. They were required to implement that. I never received a letter that they're implementing these services. Here's where she can go to obtain these services. We never received that at any time. Counsel, I had a quick question for you. The regulation that I think is good for your case is 300-511, which has that language that Judge Bennett was asking about, that the parents involved in the dispute must have an opportunity for the impartial due process hearing. Now, opposing counsel says, well, opportunity does not mean an actual hearing, and she indicated that there's authority suggesting that it's basically the opportunity for someone to decide whether you're going to have a hearing. Do you have any authority that says that that's incorrect, that opportunity for an impartial hearing means you get a hearing? I don't have any specific authority with respect to that, but the IDEA does say that parents, on behalf of their students, can file a due process complaint when they are contesting the evaluation placement or placement of a student. Do you have any authority that says anything about that? Because it seems to me, for your case, you have to say she's wrong. You have to say that her reading of that language in 511 is wrong and that opportunity for a hearing means you get a hearing. You don't have any authority to suggest that it's wrong? Well, we didn't have an opportunity to have a hearing because there was no hearing. Well, but I think that kind of presupposes the question here. She's saying that the language, and I know we're in overtime, but I'm taking you, so you're okay. She's indicating that opportunity for a hearing merely means that the official can look at it and decide whether or not they should proceed to a hearing or not. You're saying as soon as the complaint is filed under 300.507, you get a hearing, correct? That's your argument. My argument is, yes, if you are contesting the placement of a child, if there is a dispute between the parent and the school district regarding the placement of the child or a couple of other issues regarding the special education student, in this case, placement of a child, then that is sufficient to warrant a hearing. But do you have any authority interpreting that regulation that's helpful to you? Just the regulation that tells us what is required to be in a due process hearing notice, we met all of those requirements, and we met the requirement that it needed to be a dispute regarding the educational placement of the child. This case was dismissed because the ALJ didn't think this had anything to do with Tiffany's educational placement. Okay, thank you very much, Counsel. Thank you. Thank you both for your argument in this case. These are always challenging cases, so I appreciate your efforts on both sides. This matter is submitted, and we'll move on to the next matter on calendar.
judges: Clifton, Owens, Bennett